54  422
72  831

## JACOB ALEXANDER *v*. W. H. BERRY.

1. CHANCERY. *Lien. Trust. Agreement to devote income of building to pay builders.*

    An agreement in writing between the owner and builders that, for the balance due on the building account, the owner will pay to the builders all the revenue or income of the building until the debt is satisfied, but that, should the income of one year after completion of the building fail to discharge it, the whole debt shall be considered as due, does not create the relation of trustee and *cestui que trust* between the owner and builders as to the revenue and income, nor give the builders a lien or mortgage on the same, which can be enforced in chancery. *Allen* v. *Montgomery*, 48 Miss. 101, cited.

2. TRUST. *Formal words not necessary to create.*

    Any expressions which show unequivocally the intention of the parties to create a trust will have that effect. *Carpenter* v. *Cushman*, 105 Mass. 417, cited.

APPEAL from the Chancery Court of Washington County.

Hon. CHARLES CLARK, Chancellor.

*Percy & Yerger*, for the appellant, cited *Allen* v. *Montgomery*, 48 Miss. 107; 43 Miss. 189; 30 Miss. 177; and Adams Eq. 220, note 1, contending that the demand was a purely legal one, that there was no lien or trust, and that the court had not jurisdiction.

*John W. Shields*, for the appellee.

1. The agreement by Alexander that the balance due Brown & Berry should be paid out of the revenues and income of the building operates as an equitable lien on those revenues and income. 2 Story Eq. Jur. § 1217; *Wylie* v. *Coxe*, 15 How. (U. S.) 415, 420.

2. These liens arise from constructive trusts. Alexander is a trustee, and in misapplying the income is guilty of a breach of trust, and amenable to the jurisdiction of the Chancery Court in this proceeding. Hill on Trustees, 518.

*J. A. Brown*, on the same side, cited *Cowles* v. *Whitman*, 10 Conn. 124; *Carpenter* v. *Cushman*, 105 Mass. 417; *Pooley* v. *Budd*, 14 Beav. 34; *Anderson* v. *Biddle*, 10 Mo. 23; Lewin, 89; *Braylock's Appeal*, 73 Penn. St. 146; *Terrett* v. *Crombie*,

6 Lansing, 82; *Dix* v. *Akers*, 30 Ind. 431; *Price* v. *Reeves*, 38 Cal. 457; *Foote* v. *Foote*, 58 Barb. 258; *Rives* v. *Lawrence*, 41 Ga. 283; *Ward* v. *Ward*, 2 Sim. & Giff. 125; Hill on Trustees, 809, and note 1.

SIMRALL, C. J., delivered the opinion of the court.

This litigation arises upon an original and a supplemental contract between Jacob Alexander and Brown & Berry, builders and contractors, for the erection of a house in the town of Greenville. The complainant Berry became sole owner of the money due from Alexander by assignment from Brown. The supplemental contract, which was dated July 12, 1875, extended the time for the completion of the work until the 1st of September of that year, contained a statement of the balance then due to Brown & Berry, and subjected them to certain deductions, if the house was not completed by the day named. It contained this covenant, in effect, that, after deducting credits, Brown & Berry should have the same rights and remedies as were provided in the original contract. The clause of that contract referred to is in these words: " And for the balance " (that is, the sum of $4,000) " the said party of the first part, Alexander, agrees to pay to Brown & Berry all the revenue or income of the building until the said $4,000 is paid. But should the income of the building fail to pay the same at the expiration of one year from the date of the completion of the building, . . . then the same shall be considered due and payable."

The complainant in his bill alleges that Alexander has collected the rents since the completion of the work, and has not paid them over to him; that the balance due ought to be declared to be a lien upon the rents and profits of the property; and that a receiver should be appointed for their collection and payment on his debt. Alexander is alleged to have an estate by the curtesy in the land on which the house was erected, the remainder in fee being in the minor children of Mrs. Alexander, his deceased wife, of whom the said Jacob is guardian, and who are also defendants.

Does the covenant relied upon create a lien in equity on the income of the house for the balance due the contractors, or is

it simply the personal obligation of Alexander? The agreement is that he will pay to Brown & Berry all the revenue, until the debt is paid; but should the income of one year fail to discharge it, then the whole debt shall be considered as due. The contract is not that Brown & Berry shall retain the house after completion, until they have realized out of the rents the balance due them, but that Alexander will collect the rents and so apply them; and that if, at the expiration of one year, the entire debt is not discharged, all shall be due. Nor are there any words that indicate an assignment or a mortgage of the rents.

The contract does not essentially differ from that which is very common in this State, where the planter agrees to ship his crop to his factor, to reimburse him for advances and supplies. It has never been held that such a contract created a lien or equitable mortgage on the cotton produced. In *Allen* v. *Montgomery*, 48 Miss. 101, the allegation was that Allen & Co. made advances to Montgomery to raise the crop, on the contract or assurance that the cotton should be consigned to them for sale to reimburse them. It was held that they had no equitable mortgage or lien on the crop. So here Alexander agreed to pay over the income of the house. It amounted to a designation of the means with which he would pay, and is no more than a personal covenant. If the covenant could be construed as an assignment of the rents, then there would have been set up the relation of trustee and *cestui que trust*. No formal words are necessary to create that relation. Any expressions which show unequivocally the intention of the parties to create a trust will have that effect. Hill on Trustees, 65; *Carpenter* v. *Cushman*, 105 Mass. 417.

*Decree reversed.*