HARGADINE–MCKITRICK DRY GOODS COMPANY,
et al vs. BRADLEY.

Opinion delivered September 25, 1902.

1. *Chattel Mortgage—Contemporaneous Agreement—Subsequent Power of Attorney—Evidence—Question for Jury.*

Where a chattel mortgage was executed to secure a surety and contemporaneously the parties executed an agreement turning over to the mortgagee all the mortgagor's property, which agreement would transform the mortgage into an assignment which would be void because requiring no bond or inventory, and a few days afterwards a power of attorney was executed to the mortgagor which was claimed to have been executed and taken in lieu of the agreement and which would not, transform the transaction into making an assignment, then the question as to whether the power of attorney was executed in lieu of and substituted for the agreement, should have been left to the jury, and the admission of the three instruments in evidence for that purpose was not error.

2. *Instructions—Special Instructions Need not be Given when Covered by General Charge.*

When the court has fully and correctly charged the jury, special instructions, requested, reiterating the same principles of law stated in a different form, need not be given.

3. *Pleading—Fraud—Allegations Charging—Sufficiency of.*

Allegations charging that a mortgage is fraudulent because it was executed and accepted with the effect and for the purpose of hindering and delaying creditors do not sufficiently charge fraud.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by John L. Bradley against the Hargadine-McKitrick Dry Goods Company and another. Judgment for plaintiff. Defendants appeal. Affirmed.

This was an action of replevin begun in the Southern District on February 8, 1901, by Bradley, as plaintiff, against the Hargadine-McKitrick Dry Goods Company and J. J. McAlester, marshal of Indian Territory, as defendants. The complaint alleged that the plaintiff was entitled to the immediate possession of certain property described therein, which the defendants had possession of without right, and which they unlawfully detained. And plaintiff further represents that on the 14th day of December, 1893, William Hull executed a mortgage or deed of trust on the property described, in favor of plaintiff, to secure the payment of four certain promissory notes, aggregating $4,900; that said notes remain wholly unpaid; that such instrument was duly acknowledged, and on December 18, 1893, duly filed for record in the United State's clerks office at Ardmore, Ind. Ter.; that thereafter the defendant the Hargadine-McKitrick Dry Goods Company caused an execution to be issued, directing the defendant J. J. McAlester, United States marshal, to levy the same upon aforesaid property, and that said defendant McAlester, acting thereon, took wrongful and forcible possession of all of said property, and advertised it for sale on the 4th of August, 1894, and sold the same,—claiming damage by reason of said wrongful taking in the sum of $500, and praying for judgment for all of said property and $500 damages. Defendants answer said complaint, and deny that the plaintiff is the owner of and entitled to the possession of the property described therein, or any part thereof, and deny that the defendants unlawfully and wrongfully detain the same, or any part thereof, and allege that no demand was ever made upon McAlester, or any deputy of his, or anybody else in possession of said property. Defendants further answer, and allege that, at the institution of the suit,

McAlester was in possession and holding said property under and by virtue of a writ of execution duly issued by the United States Court for the Southern District, Ind. Ter., in a case styled "Hargadine–McKitrick Dry Goods Co. v. Hull and others;" that said execution was valid, and said property, levied upon as the property of Hull, sold under said execution as such; and further allege and charge the fact to be that said property was not the property of Hull, but was the property of his wife, Sippie Hull, and was her property at the time the mortgage referred to in the complaint was executed by the said Hull, and that said mortgage was executed without the knowledge and consent of said Sippie Hull; that said Sippie Hull ratified and confirmed the execution sale of said property; that one Sam Garvin purchased said property under said execution sale, and the title to said property passed to him; and that he has ever since been the owner thereof, unless he has disposed thereof. And the defendants say that the mortgage described in the complaint was fraudulent and void, as to the creditors of said William Hull, because that the mortgage referred to in said complaint was not the full and complete instrument and agreement made, and entered into between the said William Hull and the plaintiff in this action; that on, to wit, the 11th day of ———, 189——, at the time said mortgage was executed, simultaneously with the execution of said mortgage, and, as a part thereof, the said William Hull executed a power of attorney whereby he authorized and directed the said John L. Bradley to take immediate possession of a lot of sewing machine notes, and dispose of them immediately, for the purpose of raising a fund to pay the debt secured by said mortgage, and that said power of attorney and said mortgage together constituted an assignment of said property therein conveyed, but that, as an assignment of the same, was fraudulent and void, in this: that it does not provide for or contemplate that the said John L. Bradley shall execute the bond and file the inventory required by law, and permits and

directs the said John L. Bradley, grantee therein, to take possession of the property therein conveyed without executing the bond and filing an inventory as required by law.   Defendants further answer and allege the fact to be "that said mortgage is void and fraudulent in fact, for the reason that the same was executed and accepted by the said John L. Bradley with the effect and for the purpose of hindering and delaying the defendant the Hargadine-McKitrick Dry Goods Company, and other creditors of the said William Hull."   And they further answer and say that said mortgage was without consideration, for the reason that it was executed to secure and save harmless the said John L. Bradley because he had become indorser on an antecedent and pre-existing debt, and that the notes to secure which the same was given had already been executed, and that no extension of time and no consideration whatever passed from the said William Hull or said Sippie Hull, and that the property was not worth the sum alleged in said complaint, but was worth much less than the sum alleged therein.   The case was tried to a jury, who returned a verdict in favor of the plaintiff, John L. Bradley, for the property, and ascertaining its value, and judgment was pronounced upon said verdict.   Motion for new trial was duly interposed by the defendants ,and overruled by the court, and the defendant the Hargadine-McKitrick Dry Goods Company, in the case below, prosecuted this appeal to this court.

*Ledbetter & Bledsoe,* for appelants.

*J. F. Sharp* and *Potterf & Bowman,*for appellee.

GILL, C. J.   This case has heretofore been prosecuted from the several courts to the circuit court of appeals of the Eighth Circuit, and is fully reported in 96 Fed., at page 914, and also in 37 C. C. A., at page 623.   It will be noticed by perusal of the opinion in that case that the reversal of the judgment of the court of appeals of the Indian Territory was made because said

latter. court pronounced judgment, in its reversal of the court below, deciding the case, instead of remanding it to the court below for further proceeding. And while this was the occasion of the reversal, the circuit court of appeals also passed on several matters in the case for the direction of the court in a new trial thereof under the remanding order. The concluding portion of the opinion of the circuit court of appeals is as follows: "We therefore conclude that the territorial court erred in rendering a final judgment in favor of the defendants. The judgment at nisi prius should have been reversed for the error heretofore indicated, and the case should have been remanded for a new trial, with leave to the defendants to amend their answer by pleading fraud in fact, if they were so minded; and on such second hearing the trial court should have been directed to submit to the determination of the jury, under proper instructions, the question as to which of the two instruments that were executed in connection with the chattel mortgage became operative, as the determination of that question, in effect, determines whether the mortgage is valid or invalid. It is accordingly ordered that so much of the judgment of the United States court of Appeals in the Indian Territory as adjudged "that the appellee, John L. Bradley, take nothing by his action, and that the appellant here and the defendant below go hence without day,' be, and the same is hereby, reversed and annulled, and that in lieu thereof the order be that the case be remanded to the United States Court for the Southern District of the Indian Territory for a new trial, the same to be conducted in. accordance with the views herein expressed."

With a few trifling exceptions, there is no conflict in the testimony. About January 20, 1893, Jno. L. Bradley signed as surety a bond given by Wm. Hull to the White Sewing Machine Company in the sum of $5,000, conditioned for the payment by said Hull of all liability or indebtedness which might

be incurred by him to said company. During the Fall of that year it developed that Wm. Hull was liable to the company on said bond in the sum of $4,900, and, as a settlement of the matter, it was agreed between Bradley and Hull that Bradley would sign as surety Hull's notes to the company for the $4,900, and Hull would secure him against loss by giving him a mortgage on certain property. Accordingly Hull executed the mortgage, which is set out in the transcript. The mortgage is the ordinary form, with the usual clause of defeasance. It is dated December 11, 1893, and acknowledged December 14, 1893, and transfers to Jno. L. Bradley, as mortgagee, all cattle in the H2 brand (about 150 head), and their increase; 12 head of mares branded H2, and increase; 2 mules branded H2; 25 head of stock hogs and increase; also all sewing machines, old and new; "all sewing machine wagons, harness, and horses used in the sewing machine business by me,"—a schedule of which notes, machines, wagons, harness, and horses is attached thereto. On the same day it appears that Wm. Hull signed the agreement, which is as follows: "Know all men by these presents that I, William Hull, do hereby agree with John L. Bradley that said Bradley is to take possession of all the sewing machine property mentioned in mortgage of this date, and to collect, as far as possible, the amounts due on said notes, to sell the sewing machines, wagons, harness, and horses to the best advantage as to him appears, and, retaining all expenses, to pay the balance to the White Sewing Machine Company on the notes of said William Hull, on which said Bradley is surety; that, in cases in which it appears to him that the notes cannot be collected, the said Bradley is authorized to exercise his own discretion in regard to compromise and settlement, taking back the machines if he thinks advisable, and he shall be held responsible only for such money and property as he shall receive in settlement of said notes. Dated this 14th day of December, 1893. Signed Wm. Hull." This agreement was drawn up by Mr. Rennie, who was acting as attorney for

Hull, and it seems that Mr. Rennie became dissatisfied with the agreement a few days afterwards, and agreed that a power of attorney be executed in lieu of this agreement. The power of attorney reads as follows: "Know all men by these presents that I, Wm. Hull, of Pauls Valley, Indian Territory, have appointed, and by these presents do constitute and appoint, John L. Bradley, of Pauls Valley, Indian Territory, my sole, true, and lawful agent and attorney in fact, for me, and in my name, place, and stead, to collect all notes and accounts due me in the sewing machine business, to settle and compromise same as he may deem advisable, to sell the sewing machines, wagons, harness, and horses now on hand and used in connection with said business to the best advantage as to him appears; hereby granting to my said attorney, for the period of twelve months from date, full power and authority to do and perform all things in the premises requisite and necessary to the full performance of the powers aforesaid, hereby ratifying and confirming any and all things which my said attorney shall lawfully do in the premises by virtue hereof. Witness my hand, this ——— day of December A. D. 1893. Executed and delivered in the presence of L. T. Jones, Signed Wm. Hull." Some time after this the Wm. Hull Mercantile Company failed in business. Hargadine-McKitrick Dry Goods Company obtained judgment against said firm, of which Wm. Hull was a member; and levied an execution on the cattle, horses, and mules in controversy, as the property of Wm. Hull. While they were in the hands of the marshal, J. J. McAlester, under such levy, this suit was brought, after demand was made by said Bradley on the marshal for possession, and refused.

The first specification of error submitted by appellants is as follows: "The court erred in admitting in evidence, over the objection of defendants, the mortgage executed by Wm. Hull to John Bradley on the 14th day of December, 1893, because the descrip-

tion of the property in said mortgage is too indefinite, and does not describe the property as being located in the Indian Territory, and because said mortgage is not the entire instrument that was executed at the time, as the testimony shows that the agreement and power of attorney referred to in evidence as Exhibits G and H were executed simultaneously with the mortgage, and the mortgage and agreement and power of attorney, taken together, constitute an assignment and an appropriation of the property thus conveyed to raise a fund to pay the debt therein described; and as an assignment said instruments are void for the reason that they authorize and permit the grantee therein to take possession and control of the property therein conveyed, and dispose of the same, without requiring him to execute the bond and file the inventory required by law, and do not contemplate that the grantee therein shall comply with the provisions of the assignment law in regard to executing bond and filing inventory before taking possession of the property, and because said instruments are fraudulent and void, and executed with the effect and for the purpose of hindering and delaying the defendant Hargadine-McKitrick Dry Goods Company and other creditors of said Hull." The objection made to the court below upon the proposed introduction of the mortgage is as follows: "Mr. Bowman: I offer in evidence the mortgage. Mr. Ledbetter: Before offering it, I would like to ask the witness. Cross-examination by Mr. Ledbetter: Q. Mr. Bradley, at the time this mortgage was executed was not there another instrument signed up by Mr. Hull? A. Before that? Q. At the time? A. Yes, sir; about that time there was another instrument. Q. And turned over to you at the time you took the mortgage? A. I do not remember whether I received that instrument at that time or not. Q. There were two instruments executed in connection with this mortgage? A. Yes, sir; there was two instruments. Q. Do you know where these instruments are? Mr. Bowman: We expect to follow the proof up by introducing both

these instruments and showing the circumstances. Mr. Ledbetter: Will they be produced now? Mr. Bowman. Well, we will produce them right now,—two instruments in addition to the mortgage. (Producing instruments.) Mr. Ledbetter: Now, if the court please, we object to the introduction of these instruments in the present state of the testimony upon the ground that they are all part of the same transaction, and on appeal the court of appeals has held that the instrument, as a mortgage, is a nullity. The defendant objects to the introduction of the mortgage for the reason that it appears from the testimony that two other instruments were executed at the same time, and that the three instruments together constitute an assignment, and are void in law." Which objection was by the court overruled. Now, examining this objection, and comparing it with the first specification of error, it will be seen that the specification is in part contradictory of the objection, inasmuch as the offer of the mortgage was an offer of the mortgage with both of the instruments, Exhibits G and H, and the objection reached to the introduction of all the instruments, and not alone to the mortgage, and the objection interposed is not to the mortgage on account of its indefiniteness, nor on account of its failure to locate the property in the Indian Territory, at all. This latter seems to be injected here for the first time. We are bound to follow, not the opinion of the court of appeals of the Indian Territory, in this case, but the opinion of the circuit court of appeals of the Eighth Circuit. And on the question as to whether or not the mortgage and instruments marked Exhibits G and H constituted an assignment which was invalid, the circuit court of appeals uses the following language: "If the second of these instruments was executed in lieu of the first, as the plaintiff's evidence tends to show, then we are of the opinion that it did not work a change in the apparent character of the mortgage, or transform it into an assignment. In other words, by the transaction in question there was no such absolute

appropriation of certain property to raise a fund to pay a debt
as constituted it an assignment, within the rule which prevails
in the Indian Territory." We do not think that the court erred
in admitting the mortgage and both instruments, and we do not
think that the court could do otherwise than to submit to the
jury the question of whether or not the mortgage was to be taken
in connection with the first or second of the instruments executed.

Appellant's second specification of error is that the court
erred in refusing to give the following instruction requested by
them: "The defendant requested the court to instruct the jury
to find for the defendant because there is no evidence upon which
a verdict can be sustained." We have gone carefully over the
evidence in this case. The evidence tends, as a whole, to show
that Mr. Bradley, the appellee, was liable to the White Sewing
Machine Company in a large sum of money as bondsman for
William Hull; that Hull was unable to meet his liabilities to said
company; that, in order to effect security to Bradley as bonds-
man, he gave to Mr. Bradley the mortgage in question, and at
the same time in order to further secure Bradley and himself;
that he attempted to have Bradley take charge of his sewing
machine business, assets and outfit, with a view to the payment
of his liabilities to the White Sewing Machine Company first out
of the property and assets belonging to his sewing machine busi-
ness, and a writing to that effect was drawn up between them;
that one or other of the parties being dissatisfied with the terms
of the writing, and acting upon the advice of counsel that such
an agreement would invalidate the mortgage, and probably
constitute an assignment for the benefit of creditors, under the
laws in force in the Indian Territory, the proposed writing was
discarded, and in its place was substituted a power of attorney
authorizing Bradley to take entire charge of the business and
assets of said Hull in connection with his sewing machine busi-
ness, and proceed to reduce the same to cash in as rapid and

effective manner as possible, and account therefor to Hull as attorney; and that under said power of attorney said Bradley proceeded to act with reference to the sewing machine business of said Hull. We are of opinion that under this evidence the court could not do otherwise than to refuse to instruct as requested by the defendant.

Appellant's third and fourth specifications relate to instructions given by the court to the jury. The first of these instructions complained of as given by the court reads as follows: "The defendant in this case interposes two defenses: First, that the mortgage which has been introduced in evidence, and under which the plaintiff claims, together with the agreement signed and executed about the same time as the execution of the mortgage, constituted an assignment, and under the law the same was void, for the reason that affidavit and bond had not been made as the law regulating assignments makes necessary." Complaint is made of this instruction to the court—First, because it uses the word "affidavit" where the word "inventory" should have been used, and consequently would be misleading to the jury; and, second, because this is not the whole of the defense claimed by the appellant, inasmuch as it did not provide for or contemplate that Bradley should execute the bond or file the inventory required by law. The court's instruction under his statement of the facts is as follows: "That if under the mortgage and agreement first executed at or about the same time as the mortgage and which have been introduced in evidence, the property was taken possession of by the plaintiff, and handled or disposed of or managed, then the court instructs you that such agreement and mortgage together constitute an assignment, and that the mortgage would be, therefore, void. But it is contended by the plaintiff that, subsequent to the execution of the mortgage and the first agreement, that a power of attorney was executed to the plaintiff by William Hull, and that that power of attorney took

the place of and was substituted for the agreement which was
executed at or about the time of the execution of the mortgage.
If you are satisfied from the evidence that this power of attorney
was executed and took the place of the agreement executed at
the same time as the mortgage, and that the property was taken
possession of and managed under the power of attorney, and not
under the agreement, and that the agreement was not in force,
that then and in that event the court instructs you that the
mortgage and power of attorney did not constitute an assignment
and that the mortgage was therefore not void, but in full force
and effect.   Hence the question of the invalidity of the mortgage
or its validity is a question for your determination from all the
evidence in the case, depending, as I have said, upon the question
whether the agreement was in force with the mortgage, or the
power of attorney subsequently executed was in force with the
mortgage, and took the place of the agreement.   If the agreement
and mortgage were in force, then the mortgage was void, and in
that event upon this issue you should find for the defendants;
but, if the power of attorney and mortgage were in force, then
the mortgage was good, and upon that issue you should find for
the plaintiff.''   Taking the court's entire charge, and comparing
it with the directions and holding of the circuit court of appeals
of the Eighth Circuit, we are satisfied that it fully, fairly, and
cogently announces the law of the case in accordance with said
decision.   The charge was not misleading in any way.   It fairly
told the jury that it was in their province to say whether or not
the agreement made at or about the same time as the mortgage
was laid aside between the parties, and the power of attorney
substituted in its place, and that, if they found one way or other,
the law with reference to their finding made the mortgage void
or valid, as they should find.   And the circuit court of appeals
say that this was the question in the case to be submitted and
referable to a jury.   And we think that the third, fourth, fifth,
and sixth assignments of error are not well taken.   Appellants'

seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error are as follows: "The seventh assignment of error which we submit is that the court erred in refusing to give the following instruction requested by defendants: 'The court further instructs the jury that if the defendant Wm. Hull executed the mortgage relied upon by the plaintiff in this action, but at the same time, and as a part of the same transaction, executed the agreements or powers of attorney also introduced in evidence in this action, and you find that by the terms of said powers of attorney the said John L. Bradley was to take possession of and sell any material part of the property included in the mortgage, for the purpose of raising a fund to apply on said debts then in that event said agreements and mortgage would constitute an assignment for the benefit of the creditors, and be fraudulent and void, and you will find for the defendants.' The eighth assignment of error is that the court erred in refusing to give the following instruction requested by defendants: 'The court further instructs the jury that if they shall find from the evidence in this action that, at the time Wm. Hull executed the mortgage relied upon by the plaintiffs in this action, he also executed the agreements which have been introduced in evidence in reference to the said Bradley having possession of and selling the sewing machine property, and that said agreements were executed at the same time and as a part of the same transaction, and that the said mortgage and agreements by their terms provided for the sale of any material portion of the property included in the mortgage for the purpose of raising a fund to pay the indebtedness secured by the mortgage, then in that event said mortgage and agreements would constitute an assignment for the benefit of creditors, and be fraudulent and void, and you will find for the defendants in this action.' The ninth assignment of error is that the court erred in refusing to give the following instruction requested by defendants: 'That if the result of all the negotiations with reference to the giving. of the mortgage and the two instruments executed in connection

with the mortgage was an agreement that the sewing machine property described in the mortgage should be appropriated to pay the debt due the White Sewing Machine Company, or that the same was to be disposed of to raise a fund to pay the debt, then in that event the agreement would be fraudulent and void, and the jury will find for the defendants.' The tenth assignment of error is that the court erred in refusing to give the following instruction requested by the defendants: 'That if it was agreed between the parties connected with the execution of the mortgage and the said agreements or instruments in connection therewith that the mortgage was to be put upon record, and the two other instruments were to be withheld from the record, and to be secretly used by the plaintiff in handling and appropriating the property described in the mortgage to raise a fund to pay the debt of the White Sewing Machine Company, such an agreement would be a fraud upon the defendant Hargadine-McKitrick Dry Goods Company, and the other creditors of Wm. Hull, and in that event the jury will find for the defendants.' The eleventh assignment of error is that the court erred in refusing to give the jury the following requested instruction by defendants: 'If the jury find from the evidence that both the agreement and power of attorney remained in effect and were acted upon by Bradley then the mortgage and the entire transaction were fraudulent, and the jury will find for the defendants.' The appellants' twelfth assignment of error is as follows: 'The court erred in refusing to give the following instruction requested by defendants: 'The jury are further instructed that if the result of all the negtotiations with reference to the giving of the mortgage and the two instruments executed in connection with the mortgage was an agreement that the sewing machine property described in the mortgage should be appropriated to pay the debt due the White Sewing Machine Company or that the same was to be disposed of to raise a fund to pay the debt, then in that event the agreement would be fraudulent and void, and the jury

will find for the defendants.'" We are satisfied that the same reasoning heretofore given applies to these assignments of error. Under the decision of the circuit court of appeals, heretofore referred to, the court fully and fairly charged the jury as to the matters assigned as error, and reiterating the instructions in a different form would avail nothing.

Appellants complain that the court gave no charge whatever on the subject of fraud in fact. The only charge requested by the defendants that in any wise asked for a charge of this kind by the court is found in the tenth assignment of error. which reads as follows: "That if it was agreed between the parties connected with the execution of the mortgage and the said agreements or instruments in connection therewith that the mortgage was to be put upon record, and the two other instruments were to be withheld from the record, and to be secretly used by the plaintiff in handling and appropriating the property described in the mortgage to raise a fund to pay the debt of the White Sewing Machine Company, such an agreement would be a fraud upon the defendant Hargadine-McKitrick Dry Goods Company, and the other creditors of Wm. Hull, and in that event the jury will find for the defendants." It is true that the defendants amended their answer in accordance with the suggestion of the circuit court of appeals, in an attempt to charge the plaintiff with fraud. The language used in the amendment is as follows: "Further answering, these defendants allege and charge the fact to be that said mortgage is void and fraudulent in fact, for the reason that the same was executed and accepted by the said John L. Bradley with the effect and for the purpose of hindering and delaying the defendant Hargadine-McKitrick Dry Goods Company, and other creditors of the said William Hull." To say that acts effect a fraud upon an individual is very different from saying that certain acts were done with the intent to have the effect. An allegation of fraud must be specific in two respects: It must show

—First, that the party acting intended to produce by his act conditions which would entail upon some one a loss or disadvantage; and,second, that this intent was followed up by the act itself,and for the purpose intended. To say that one who is endeavoring to protect himself does certain things,and that what he does produces an effect which might or might not be the result of the intent, is not, certainly, a sufficient charge of fraud. Mr. Bump says: "The test words by which the validity of a transfer is tried, are 'to the end, purpose, and intent to hinder, delay, and defraud.'" Bump, Fraud. Conv. §24. "The burden of charging as well as proving fraud is on the party alleging it." Butler vs Viele, 44 Barb. 166. "Fraudulent should be averred in pleading a charge of fraud." Moss vs Riddle, 9 Cranch, 351, 3 L. Ed. 123; Bently vs Dunkle, 57 Ind. 374; Carpenter vs Cushman, 121 Mass. 265; Hogan vs Burnett, 37 Miss. 617; Martin vs Fox, 40 Mo. App. 664; Shoe Co. vs Haught, 41 W. Va. 275, 23 S. E. 553; True vs Congdon, 44 N. H. 48; Atwood vs Impson 20 N. J. Eq. 150. And see list of authorities as to necessity of intent given under head of "Fraudulent Conveyances" in 24 Cent. Dig. § 10. Now we think, under the charge given by the court, that the question of fraud was as fully covered as the evidence in the case warranted, even though the charge of fraud had been well pleaded. No advantage was sought to be taken of the peculiarity of the attempted allegation of fraud in this answer; and taking the answer in its full intendment, and taking the evidence in all its scope, in connection with the rules announced by the circuit court of appeals, supra, we do not see how the trial court in this case could have complied with the law more fully than it did in its entire instruction to the jury in this case, and we do not see where there is any error in either the seventh, eighth, ninth, tenth, eleventh, and twelfth specifications of error. The jury had a right, under the instructions of the court, to say, upon the evidence, whether the parties acted upon the mortgage with the first agreement, or whether the parties acted upon the

(18)

mortgage with the power of attorney, and, if its verdict was one way or the other, the law would be one way or the other. If the power of attorney was substituted for the agreement, the mortgage was a valid instrument, and the court so says. If the agreement was acted upon in connection with the mortgage, and the power of attorney was not substituted, the court tells the jury pointedly in his instruction that the mortgage would be invalid and that the plaintiff could not recover. There was evidence point blank that the power of attorney was taken as a substitute on the part of the plaintiff. There was evidence on the part of the defendants, the appellants, which tended to establish that the agreement and the power of attorney were acted upon. The jury could accept the one, or could accept the other. Accepting the one, the other, of course, was excluded; and it is not for this court to say that they ought to have accepted one as against the other.

Upon the whole case, we are of opinion that there is no error, and the decision of the court below is therefore by this court affirmed.